1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SEAN BARNES and CARL DWYER
individually, and on behalf
of all others similarly situated,

        Plaintiffs,

    v.

THE EQUINOX GROUP, INC., and DOES 1-
100, inclusive,

        Defendants.

_____/

No. C 10-3586 LB

**ORDER GRANTING PLAINTIFFS'
MOTIONS FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT,
AWARDING CLAIMS
ADMINISTRATION FEES,
ATTORNEY'S FEES, COSTS, AND
INCENTIVE AWARDS, AND
AUTHORIZING ENTRY OF
JUDGMENT OF DISMISSAL WITH
PREJUDICE**

[ECF Nos. 159 & 160]

**INTRODUCTION**

All claims but the claim for unreimbursed business expenses settled in a related class action in

Los Angeles County superior court, *Evans v. Equinox*, Case No. BC44058.  The parties agreed to

settle the claim for expense reimbursement in this case.  *See* DeSario Decl., ECF No. 160-1, ¶ 12.[1]

The court previously granted the unopposed motion for preliminary approval.  *See* Order, ECF No.

156.  Plaintiffs then moved for final approval and for attorney's fees and costs.  ECF Nos. 159, 160.

The court held a hearing on August 1, 2013, and grants the unopposed motions.  Because the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
generated page number at the top of the page.

C 10-3586 LB
ORDER

1   requested amounts are fundamentally fair, adequate and reasonable, the court awards $50,000 in

2   attorney's fees, $10,000 in litigation costs, $23,000 in claims administration costs, and a $5,000

3   incentive award each (or $10,000 total) for the two named plaintiffs.

4                                              **STATEMENT**

5        Plaintiffs sued Equinox for failing to (1) pay them wages for all hours worked and (2) reimburse

6   certain business expenses.  *See* Second Amended Complaint, ECF No. 78.  The claim settled in this

7   class action is about the business expenses, "including music to create workout mixes, heart rate

8   monitors, stopwatches, fitness equipment, cell phones and internet plans, and CPR and other fitness

9   certifications."  DeSario Decl., ECF No. 160-1, ¶ 5.  The other claims settled in the related *Evans*

10  state class action case for $5.5. million in a March 15, 2013 final approval that followed discovery

11  and a fully-briefed class certification motion in this case and subsequent mediation in both cases.

12  *See* DeSario Decl., ECF No. 160-1, ¶ 12.  Plaintiffs here joined the *Evans* settlement.  *Id.* ¶¶ 12-13.

13       The terms of the expense reimbursement settlement in this case are as follows.  *See* Desario

14  Declaration Ex. A, ECF No. 160-1 (the "settlement agreement").  The parties agree to certification

15  of an "Expense Reimbursement Class," defined as

16       [A]ll persons employed as Personal Trainers in any of Defendant's facilities located in the
         State of California, except those employed at former Sports Club LA locations, specifically
17       Equinox Beverly Hills, Equinox Irvine and Equinox West LA during the Class Period
         (defined as June 1, 2006 through the date that Preliminary Approval is granted).
18

19  Settlement Agreement § 1.10.  The settlement agreement excludes any claims settled in the *Evans*

20  case and provides for a total payment of $150,000 allocated to the following categories: (1) expense

21  reimbursement to class members based on the number of personal training sessions they conducted;

22  (2) attorney's fees up to one-third of the settlement amount and not to exceed $50,000 (if approved

23  by the court) and litigation costs not to exceed $10,000; (3) administrative costs of the settlement (as

24  administered by the independent claims administrator CPT Group and totaling $23,000); and (4)

25  incentive awards to Plaintiffs of up to $5,000 each (for a total of $10,000) if approved by the court.

26  Excess funds will be distributed as a *cy pres* award to Bet Tzedek children's advocacy program. *See*

27  *id.* §§ 1.14, 3.2.1-2.2, 3.1-3.3.  Because the settlement payments are for business expenses, they are

28  not subject to any withholding.  *Id.* § 8.1.  The claims administrator will issue any tax documents

UNITED STATES DISTRICT COURT
For the Northern District of California

such as 1099 forms to class members, class counsel, and the class representatives. *Id.* § 8.2.

Following the court's preliminary approval and conditional certification of the settlement, *see* 4/18/13 Order, ECF No. 156, Equinox gave CPT Group information that included the 2,182 class members' names, addresses, and the number of training sessions each performed. Morales Decl., ECF No. 160-1, ¶ 5. CPT Group updated the addresses by running them through the National Change of Address database and then mailed the court-approved notice packets to the class members on May 20, 2013. *Id.* ¶¶ 6-7. On June 20, 2013, CPT mailed reminder postcards to the 1,940 class members who had not submitted a claim form or a request for exclusion. *Id.* ¶ 8. CPT Group conducted a skip trace on all returned mail with no forwarding address. *Id.* ¶ 9. They were able to find addresses for and re-mailed notice packets to all but seven class members. *Id.* ¶ 10. As of July 15, 2013, CPT's data had received the following responses:

| Category | Number |
| --- | --- |
| Total Class Members | 2,182 |
| Responses to Class Notice | 404 |
| Objections | 1 |
| Requests for Exclusion | 5 |
| Late Claim Forms | 5 |
| Deficient Claim Forms | 22 |
| Outstanding Disputes Re: # of Sessions Worked | 14 |
| Total Valid Claims | 391 (17.92% of Total Class Members) |
| Total Training Sessions | 1,508,403.36 |
| Claimed Training Sessions | 643,875.86 (42.69% of Total Training Sessions) |
| Average Sessions per Claimant | 1,646.74 |
| Average Settlement Amount | $146.53 |
| Largest Single Claim | $719.02 |

Morales Decl., ECF No. 160-1 ¶¶ 11-20.

One person named Jerrell Wesley objected to the settlement. Morales Decl., Ex. B to Desario Decl., ECF No. 160-1, ¶ 12; Objections to Class Action Settlement, ECF No. 164. That person also

submitted a claim form. Morales Decl., Ex. B to Desario Decl., ECF No. 160-1, ¶ 12 He appeared at the state court hearing as an objector with someone else named Randall Pittman, who is not a class member and who has made similar objections (without being a class member) in other class action settlements (rendering him, in Plaintiffs' view, a vexatious litigant). *See* ECF No. 160-1 at 146; Desario Decl., Exs. D-F; Motion, ECF No. 160 at 17. Wesley objects that the amount of the settlement is inadequate, the attorney's fees requested are excessive, and the case should either be stayed in favor of another action in Los Angeles Superior Court or allowed to go to trial. *See* Objections, ECF No. 164. Neither Wesley nor any other objectors appeared at the August 1, 2013 final fairness hearing.

**ANALYSIS**

**I. JURISDICTION**

This court has jurisdiction under 28 U.S.C. § 1332(c) and (d)(2).

**II. NOTICE**

The court finds that the notice to the settlement class, as described in the court's earlier order provisionally approving the class, provided the best practicable notice to the members of the class (reaching of class members) and satisfied the requirements of due process. As discussed above, the parties employed CPT Group, Inc., a claims administrator, to oversee the class notification process. At the preliminary fairness hearing, counsel explained that CPT Group administered the related *Evans* settlement. It mailed notices and reminder postcards to the class members, performed skip traces on all return mail, and worked with claimants to resolve disputes regarding deficiencies in claims and disputes about the number of sessions that individual class members' worked. The court finds that these procedures were adequate.

**III. CLASS CERTIFICATION**

For the reasons and under the standards set forth in the court's April 18 order, the court finds that the proposed settlement class here still meets the requirements of Federal Rule of Civil Procedure 23(a) and (b). The court certifies the class members set forth above solely for the purpose of entering a settlement in this matter.

UNITED STATES DISTRICT COURT
For the Northern District of California

**IV.  FINAL APPROVAL OF SETTLEMENT AGREEMENT**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified factors relevant to assessing a settlement proposal:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted).

The court evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary settlement is appropriate.  First, the strength and relative relation of this case to the state case militate in favor of settlement.  Second, litigation poses risks, and this litigation (as the docket sheet reveals) has been expensive and protracted (and complicated given the interplay with the related state class action).  Given the risk of protracted appeals, this factor favors settlement.  Third, the amount offered in settlement appears sufficient to cover the expenses at issue in this litigation given the risks identified.  The settlement fund has been allocated to the class members based on the number of personal training sessions each class member taught during the class period.  Settlement Agreement § 3.4.  The net settlement amount results in an average award of around $140.  This seems reasonable in light of the defenses and appellate risks that experienced counsel have identified.  *See* Motion at 13.  The monetary value of this portion of the case is relatively low compared to the rest of the case (which settled in state court for a fund of $5.5 million).  Also, the settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of a private mediator.

The extent of discovery and stage of proceedings also support the settlement agreement.  Before mediation, the parties engaged in extensive discovery over several years.  *See generally* Docket.

C 10-3586 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

The class counsel propounded discovery, deposed Equinox's 30(b)(6) witness, interviewed and obtained statements from scores of class members, inspected several Equinox locations and defended numerous class members' depositions. DeSario Decl., ECF No. 160-1, ¶ 9. In addition, Plaintiffs had already filed their class certification motion when the *Evans* case settled.

Finally, the reaction of class members to the proposed settlement also favors approval. While fewer than 18% of the class members submitted claim forms, these represent over 42% of the total training sessions.

In addition, only one class member objected to the settlement. *See* Objections to Class Action Settlement, ECF No. 164. Mr. Wesley claims generally that the settlement fund is inadequate as compensation or deterrence. *Id.* But he fails to explain why that is so. *Id.* He contends the attorney's fees requested are excessive because the settlement fund is purportedly inadequate. *Id.* at 3. But the court rejects the underlying premise of that argument. He also argues that the case should be stayed in favor of another action "to avoid duplicative litigation." *Id.* at 2. But settling this case better achieves that end. Finally, he contends that the case should be allowed to go to trial to prevent a coupon settlement. *Id.* at 3. The settlement agreement does not provide for a coupon settlement. In sum, the court overrules his objections.

In addition, Mr. Welsey is just one of 2,182 class members, and only five members requested exclusion. The nature of the expenses (*see supra*) – when compared to the other settled claims in the *Evans* case – gives context to this result, particularly considering the success rate in identifying current contact information for class members.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted.

## V. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

The record establishes that counsel served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8). *See* DeSario Decl. Ex. K, ECF No. 160-1 at 256-364.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   **VI.  ATTORNEY'S FEES**

2       **A.  Legal Standard**

3       Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action, the court

4   may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

5   parties' agreement."  Attorney's fees provisions included in proposed class action agreements must

6   be "fundamentally fair, adequate and reasonable."  *Staton*, 327 F.3d at 964.

7       In "common fund cases," a court has discretion to award attorney's fees either as a percentage of

8   such common fund or by using the lodestar method.  *Id.* at 967-968.  In a common fund case, a

9   lodestar method does not necessarily achieve the stated purposes of proportionality, predictability

10  and protection of the class and can encouraged unjustified work and protracting the litigation.  *See In*

11  *re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).  Additionally, the

12  percentage-of-the-fund method is appropriate where – as here – the amount of the settlement is fixed

13  without any reversionary payment to the defendant.  *See Chu v. Wells Fargo Investments, LLC*, Nos.

14  C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16,2011).  In the Ninth

15  Circuit, the "benchmark" for attorney's fees in common fund class actions is 25% of the common

16  fund.  *Staton*, 327 F.3d at 968.  "The benchmark percentage should be adjusted . . . when special

17  circumstances indicate that the percentage recovery would be either too small or too large in light of

18  the hours devoted to the case or other relevant factors."  *Six Mexican Workers v. Arizona Citrus*

19  *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

20  1048 (9th Cir. 2002) (explaining that the rate ultimately selected must be supported by findings that

21  take into account all of the circumstances of the case).

22      **B.  Attorney's fees**

23      Class counsel seeks one-third of the gross settlement fund as award of attorney's fees.  Motion

24  for Attorneys' Fees and Costs ("Fees Motion"), ECF No. 159 at 10.  Courts in the Ninth Circuit look

25  to the following factors when determining what a proper percentage is for an award of attorney's

26  fees: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class

27  beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below

28  the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing

C 10-3586 LB
ORDER

7

UNITED STATES DISTRICT COURT
For the Northern District of California

the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-52.

Applying these factors, the court finds an award of 33% is warranted in this case. Given the interplay with the *Evans* case, the results achieved are fair. Counsel assumed substantial risk, litigated risk on a contingent basis, and are receiving fees that are fair considering those factors. The percentage rate is appropriate given the small figures at stake. *See* Fees Motion at 13-14 (collecting cases); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. Jul. 27, 2010) (collecting cases). The class reaction supports the award. So does the lodestar cross-check. The hourly rates ($425 for attorney Molly DeSario; $525 for attorney Matthew Bainer; and $650 for attorney Scott Cole, *see* DeSario Decl. Ex. B, ECF No. 159-1 at 88) are reasonable given counsels' qualifications. *See* DeSario Decl., ECF No. 159-1, ¶¶ 16-20; *id.* Ex. D. They billed 1,756 hours for a lodestar amount of $849,370.00. *See* DeSario Decl. Ex. B, ECF No. 159-1 at 88.

## VII. LITIGATION COSTS

Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Class counsel seeks reimbursement of $10,000 in litigation expenses, which is the maximum allowed under the settlement agreement. *See* Fees Motion, ECF No. 159 at 15. Class counsel submitted detailed records showing that they incurred $47,563.12 in costs. DeSario Decl. Ex. C, ECF No. 159-1 at 90-92. The submissions support an award of compensable costs of $10,000.00.

## VIII. INCENTIVE AWARDS

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

This case posed complicated issues with an interplay in a related case and protected litigation and mediation.  Under all the circumstances, including the collective outcome, the court approves the incentive awards.

## CONCLUSION

The court approves the settlement in the total amount of $150,000 and awards $50,000 in attorney's fees, $10,000 in litigation costs, $23,000 in claims administration costs, and $5,000 as an incentive award to each named plaintiff for a total of $10,000. This disposes of ECF Nos. 159 at 160.

**IT IS SO ORDERED.**

Dated: August 1, 2013

_____
LAUREL BEELER
United States Magistrate Judge